*1000 OPINION.
Smith:
This proceeding presents two questions: First, whether the New Jersey company was indebted to the petitioner in 1931 in the amount of $1,002,582.01, and, second, whether the portion of that amount which proved to be uncollectible in 1937 is legally deductible from the petitioner’s gross income of 1937.
It is the contention of the respondent in this proceeding that the New Jersey company was not indebted to the petitioner in 1937 in any amount whatever. His contention is that the consideration for the reinsurance agreements entered into on March 19, 1932, was the transfer to the petitioner by the New Jersey company of assets of a value of $1,002,582.01, and that when the New Jersey company made the transfer of those assets within a few days after the dates of the agreements the debt was settled.
We do not think that this contention can stand in the light of the decree of the Court of Chancery of New Jersey entered against the petitioner on February 11, 1936. In that proceeding the petitioner and the other defendants contended that the unearned premiums on the policies reinsured by the petitioner were held in trust for reinsurance and that the fond was appropriately devoted to effecting the reinsurance in discharge of the trust. This contention of the defendants was not sustained by the court. It held that the transfer was not made for a valuable consideration within the meaning of the New Jersey statute; that it was made at a time when the New Jersey company was insolvent; and that therefore the transfer was null and *1001 void as to the creditors of New Jersey. The court did not hold, however, that New Jersey was not indebted to the petitioner in any amount whatever. The petitioner had serviced the policies which had been reinsured by it and presumably had paid out large amounts in settlement of claims arising out of the policies. The court held that petitioner was entitled to file a claim against the liquidator for the net amount of the unearned premiums on the policies of $1,002,-582.01. It further held that the petitioner was subrogated to the rights of the policyholders reinsured. We think this is tantamount to recognizing that the New Jersey company was indebted to the petitioner in the amount of the unearned premiums on the policies. There is no basis for the claim of fraud on the part of the petitioner as a result of entering into the agreements of May 19,1932. All that the court determined was that, since the New Jersey company was insolvent at the time the transfer of the assets was made to the petitioner in the month of May 1932, that transfer was null and void as to the other creditors. This left the petitioner a creditor of the New Jersey company in the amount of $1,002,582.01.
In this connection it should be noted that the petitioner was permitted to make proof of claim against the New Jersey company as a policyholder creditor in the exact amount of the unearned premiums on the policies reinsured, which is the amount that the New Jersey company agreed to pay under the reinsurance agreements of May 19, 1932. It was not required to limit its claim to the amount that it had actually paid out in servicing the policies. It was not a general creditor of the insolvent corporation.
The next question is whether this indebtedness was “in the nature of agency balances and bills receivable”, within the meaning of section 204 (c) (6) of the Eevenue Act of 1936.
Insurance companies are taxed under the Revenue Act of 1936 differently from other companies. They are required to include in gross income the amount earned during the taxable year from investments and from underwriting, gain from the sale or other disposition of property, and certain other items. Insurance companies, other than life or mutual, in which class the petitioner falls, are permitted to deduct from gross income under section 204 (c) (6) “Bad debts in the nature of agency balances and bills receivable ascertained to be worthless and charged off within the taxable year.” In the course of the business of an insurance company transacting business in different states premiums on policies written are ordinarily collected by the insurance company’s agents. Receipt by the agent is receipt by the principal. The company is chargeable with the gain derived through receipts by the agent. Where the premiums which have *1002 been collected by the agent can not be collected by the company from the agent, the insurance company is permitted to deduct from its gross income as a bad debt the amount owed to it by the agent.
The petitioner contends that as a result of the reinsurance agreements entered into by it on May 19, 1932, it was entitled to receive from the New Jersey company the net unearned premiums contracted for in the amount of $1,002,582.01; that by reason of the decree of the Court of Chancery on February 11, 1936, the amount owed to it by the New Jersey company was never paid in full and that it is entitled to deduct as a debt ascertained to be worthless and charged off in 1937 the amount which it was unable to collect. It claims that the uncollectible amount was of the nature of “agency balances.” We think that the petitioner’s contention upon this point must be sustained. There is no question but that the portion of the $1,002,582.01 owed to it by New Jersey, which was not collected in 1937, was ascertained to be worthless during 1937 and the charge-off of that amount to surplus constituted a proper charge-off thereof.
In its income tax return for 1937 the petitioner claimed the deduction from gross income of $773,523.56. That amount was arrived at by deducting from the $838,523.56, which it paid over to the liquidator, $65,000 which was received from Metropolitan Casualty Insurance Co. The petitioner now admits that it is not entitled to deduct as a bad debt any amount in excess of $527,582.01, which is arrived at in the following manner:
Net due from New Jersey May 1932 for re-insurance premium— $1,002, 582.01
Paid, April 2, 1937, on final settlement in New Jersey liquidation proceedings- 475, 000.00
Balance charged off April 1937- $527, 582. 01
It is to be observed, however, that the debt which was owed to the petitioner by New Jersey in 1937 was $1,002,582.01. The fund constituting the transferred assets, plus income thereon at the date of settlement, was in the amount of $1,339,703.98. Of this fund the petitioner was permitted to retain $501,180.42. This amount was made up of $7,680.42 which the petitioner had advanced for taxes and insurance premiums in connection with the segregated assets and $18,500 for the petitioner’s services and expenses incident to the handling and servicing of the segregated assets, plus $475,000. The petitioner contends that the first two items are not to be taken into account in determining the amount of the bad debt. We think that they should be. Presumably, the petitioner obtained the benefit of the deduction from gross income in years prior to the taxable year of $7,680.42 paid as taxes, and of $18,500 in cash paid for services and *1003 expenses. Since the petitioner has already obtained the benefit of the deduction of those amounts there is no occasion for allowing them as a bad debt deduction.
In our opinion the only amount of the bad debt which the petitioner is permitted to deduct is the difference between $1,002,582.01, constituting the debt owed to it by New Jersey, and $501,180.42, which it was permitted to retain under the settlement agreement. We accordingly hold that the bad debt deduction in respect of the item in question is in the amount of $501,401.59 and no more.
The findings of fact, paragraphs 18 to 23, inclusive, were stipulated by the petitioner upon the insistence of the respondent. The petitioner argues that they are not germane to the question as to the correct amount of the debt ascertained to be worthless and charged off in 1937. Its contention is that the Metropolitan Casualty Insurance Co. of New York made a profit upon underwriting and that as a result of the settlement agreement between the petitioner and that company the petitioner received $65,000 as its share of the profits. This profit was included in petitioner’s Federal income tax return for 1937. The petitioner contends that the receipt of this income had nothing whatever to do with the debt ascertained to be worthless and charged off by the petitioner in 1937.
The only argument which the respondent makes in his brief with respect to the $65,000 is that it shows that the petitioner considered the entire amount of its loss upon the New Jersey transaction as a loss rather than as a bad debt. We are of the opinion that the $65,000 item is not germane to the question of the amount of the debt ascertained to be worthless and charged off in 1937.
After deduction of the bad debt of $501,401.59, petitioner had a remaining loss of over $200,000, the assets which it was required to surrender to the court amounting to $838,523.56. The respondent concedes that petitioner is entitled to a loss deduction of $43,560, stating in his brief:
* * * The respondent now concedes that petitioner is entitled to a deduction in the amount of $43,560.00 of the loss claimed. A deduction of this amount is allowable under section 204 (c) (10) of the Revenue Act of 1936 for the reason that it now appears that petitioner had taxable miscellaneous income taxable under section 204 (b) (1) (C) in the form of the recovery of agency balances previously charged off in the amount of $43,560.00. In short, this amount is deductible even though it did not represent a bad debt in the nature of an agency balance or bill receivable because of section 204 (c) (10).
Reviewed by the Board.

Decision will be entered under Bule 50.

Murdock and Mellott dissent,